GREGORY S. GILCHRIST (Cal. Bar No. 111536)
RYAN BRICKER (Cal. Bar No. 269100)
SOPHY TABANDEH (Cal. Bar No. 287583)
KOURTNEY SPEER (Cal. Bar No. 348243)
VERSO LAW GROUP LLP
565 Commercial Street. 4th Floor
San Francisco, CA 94111
Telephone: (415) 534-0495
Email: greg.gilchrist@versolaw.com
       ryan.bricker@versolaw.com
       sophy.tabandeh@versolaw.com
       kourtney.speer@versolaw.com

Attorneys for Plaintiff
MyOutDesk, LLC

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYOUTDESK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MOD ASSISTANTS, LLC a Texas limited liability company, MOD ASSISTANTS, LLC a Colorado limited liability company,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND CANCELLATION OF TRADEMARK**<br><br>**JURY TRIAL DEMAND** |

This lawsuit is necessary to stop Defendants Mod Assistants, LLC, a Texas limited liability company and Mod Assistants, LLC, a Colorado limited liability company, (collectively, "Mod Assistants" or "Defendant") from unfairly trading on MyOutDesk, LLC's ("MyOutDesk" or "Plaintiff") MOD trademark—which consumers recognize as a symbol of MyOutDesk's popular virtual assistant services, and from usurping the goodwill and reputation that MyOutDesk has built in its trademark.

MyOutDesk complains against Mod Assistants as follows:

## PARTIES, JURISDICTION AND VENUE

1.      MyOutDesk is a limited liability company headquartered at 3001 E Street, Sacramento, California 95816.  MyOutDesk has been providing virtual assistance services for more than twenty

1. years. Today, MyOutDesk is considered a leader in the virtual assistance services industry.

2. MyOutDesk is informed and believes that Defendant, Mod Assistants, LLC, is a Texas limited liability company with its headquarters located at 3232 McKinney Ave. Suite 500, Dallas Texas, 75204.

3. MyOutDesk is informed and believes that Defendant, Mod Assistants, LLC, is a Colorado limited liability company with its headquarters at 215 S. Wadsworth Blvd., Suite 550, Lakewood, Colorado 80226.

4. Plaintiff's trademark claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, et seq.). This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act). This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction), and because there is a complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs.

5. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of doing business in California (including by offering its virtual assistant services in California under its infringing mark).

6. MyOutDesk is informed and believes that venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(a) because a substantial part of the events giving rise to MyOutDesk's claims arose in this district. Defendant promotes its virtual assistant services to customers in this district through its website which is accessible to residents of this district and offers those services to customers in California.

**FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**

**MyOutDesk Owns Strong Rights in Its MOD Mark**

7. Founded in 2008 by current CEO Daniel Ramsey, MyOutDesk is the leading virtual assistant and staffing company. MyOutDesk is an outsourcing company that provides highly-skilled remote working professionals to support businesses across various industries, such as e-commerce, human resources, finance, insurance, real estate, property management, healthcare, and tech.

8. MyOutDesk recruits and hires top-tier talent to provide remote assistance services to clients across the United States. MyOutDesk's virtual assistants perform various tasks ranging from sales, to customer service, to administrative support—such as answering calls, scheduling appointments, managing emails, conducting research, social media management, data entry, customer support, graphic design, cold-calling, and payroll.

9. MyOutDesk is the industry's leading virtual assistant company, servicing over 8,500 clients nationwide, including clients ranging from Fortune 500 companies to small- and medium-sized businesses. MyOutDesk uses a stringent talent matching process to ensure that its clients receive the most experienced, educated, and skilled virtual assistance services.

10. MyOutDesk has been recognized and honored for its best-in-class services, receiving multiple industry awards. For example, MyOutDesk has been ranked the #1 virtual assistant provider by TechRadar, a popular online technology publication, for five consecutive years from 2020-2025. MyOutDesk was also named the Best Virtual Assistant Service provider by U.S. News & World Report in 2024 and a top provider of virtual assistant services by Clutch, an online platform that partners businesses together.

 

11. In 2019, MyOutDesk's CEO, Daniel Ramsey, published a book, *Scaling Your Business with MOD Virtual Professionals*, which has now helped over 5,000 businesses in North America hire talented virtual staffing to scale their operations and is a top selling book on Amazon.

12. Since at least July 2015, MyOutDesk has been promoting its virtual assistant and staffing services under its MOD mark ("MOD Mark"). For nearly a decade, MyOutDesk has used and advertised its MOD Mark nationwide.

13. MyOutDesk annually has spent a great amount of time, money, and effort advertising and promoting its services offered in connection with its MOD brand. MyOutDesk began marketing the MOD Mark as early as July 2015 through print and multimedia channels, such as Google, Meta (Facebook & Instagram), TikTok, YouTube, X (formerly Twitter), broadcast radio, Reddit, Quora, LinkedIn, and more.

14. Examples of MyOutDesk's use of the MOD Mark follow:




15. As a result of MyOutDesk's extensive use and promotion of its mark, the public associates the MOD Mark exclusively with MyOutDesk.

16. MyOutDesk has also used its MOD Mark in connection with other services. In 2024, MyOutDesk established MOD Spark and MOD Spark Plus, its referral-based Affiliate Program for non-clients. Affiliates of the MOD Spark and MOD Spark Plus programs earn rewards by connecting businesses in their networks with MyOutDesk's trusted virtual assistants.

17. As a result of its extensive sales and advertising—and the unsolicited praise and

attention of its services and brand—MyOutDesk owns strong, nationwide common law rights in its MOD Mark.

18. On August 5, 2024, MyOutDesk filed a trademark application (Serial No. 98/682,663) with the United States Patent and Trademark Office ("USPTO") to register its MOD word mark for:

> Class 35: Virtual assistant services; virtual assistant services, namely, providing virtual on-line support staff services for businesses; business services, namely, virtual business administrative and support staff services for others; virtual assistant services, namely, providing virtual on-line customer support services, administrative support services, office management support services, marketing support services, sales and lead generation support services, human resources and recruitment support services, accounting and bookkeeping support services, billing support services, real estate transaction support services, and document management support services for others

19. This application is currently pending before the USPTO. On February 13, 2025, the USPTO issued a Non-Final Office Action preliminarily refusing registration of MyOutDesk's MOD Mark on the grounds that the mark would likely be confused with Mod Assistants' trademark registrations for MOD (Reg. No. 7,495,013) and MOD ASSISTANTS and Design (Reg. No. 7,320,991) for

> Class 45: Providing non-medical personal assistant services for others in the nature of planning, organizing, coordinating, arranging and assisting individuals to perform daily tasks

20. On or around July 26, 2022, MyOutDesk informed Mod Assistants that its use of the MOD mark infringes MyOutDesk's prior rights in its MOD mark and that Mod Assistants must stop using its infringing mark.

21. After being put on notice of MyOutDesk's prior rights in the MOD mark, on or around February 10, 2023, Defendant applied to register MOD ASSISTANTS (Reg. No. 7,320,991) with the USPTO for identical services MyOutDesk provides under the MOD mark. At the time of filing this

1  application, pursuant to Section 2(f) Claim of Acquired Distinctiveness, Defendant represented to the
2  USPTO that "MOD ASSISTANTS has become distinctive of the goods/services through the
3  applicant's substantially exclusive and continuous use of the mark in commerce…." Defendant
4  further represented that "To the best of the signatory's knowledge and belief, no other persons,
5  except, if applicable, concurrent users, have the right to use the mark in commerce, either in the
6  identical form or in such near resemblance as to be likely, when used on or in connection with the
7  goods/services of such other persons, to cause confusion, or mistake, or to deceive."

8      22.    After being put on notice of MyOutDesk's prior rights in the MOD mark, on or around September 23, 2023, Defendant filed a trademark application for MOD (Reg. No. 7,495,013) with the USPTO. At the time of filing this application, Defendant represented to the USPTO: "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion, or mistake, or to deceive."

15      23.    On or around April 22, 2025, MyOutDesk wrote again to Mod Assistants, demanding that it abandon its trademarks registrations for MOD (Reg. No. 7,495,013) and MOD ASSISTANTS and Design (Reg. No. 7,320,991) and cease use of the marks. Mod Assistants responded that it will not stop using its infringing marks.

19      24.    As a result of MyOutDesk's decade-long use and promotion of its mark, the public associates the MOD Mark with MyOutDesk, and has done so since long before Mod Assistants began using the MOD and MOD ASSISTANTS and Design marks.

**Defendant's Infringement**

23      25.    Beginning at some point after MyOutDesk began using its MOD mark, and continuing until the present, Mod Assistants has promoted, distributed, offered, and provided personal and virtual assistant services under the MOD and MOD ASSISTANTS marks.

26      26.    MyOutDesk is informed and believes that Defendant initially operated under the name Just Be Personal Assistants and rebranded to Mod Assistants after MyOutDesk began using its MOD Mark.

27. In addition to personal assistant services, Mod Assistants offers virtual assistants to help clients with email management, data entry, vendor research and maintenance, client relationship management, expense and invoicing tasks, online research, and general administrative tasks.

28. Mod Assistants promotes and offers its virtual assistant services in connection with the MOD and the MOD ASSISTANTS marks throughout the United States, including in this district, via its website at www.modassistants.com.

29. Mod Assistants' use of MOD and MOD ASSISTANTS marks for identical virtual assistant services and related personal assistant services ("Infringing Services") is likely to confuse consumers about the source of Mod Assistants' services and/or relationship between Mod Assistants and MyOutDesk. No later than July 2022, MyOutDesk put Mod Assistants on notice that its use of the MOD mark was infringing.

30. Despite these warnings, MyOutDesk is informed and believes that Mod Assistants has continued to promote, distribute, offer, and provide the Infringing Services to many customers, and has obtained and continues to obtain substantial profit from these sales.

31. Mod Assistants' unauthorized use of the MOD and MOD ASSISTANTS marks is likely to deceive, confuse, and mislead actual and prospective consumers regarding the source of the Infringing Services, including whether the Infringing Services are put out by MyOutDesk or whether MyOutDesk has sponsored, authorized, or is somehow affiliated with Mod Assistants. MyOutDesk, consequently, has no alternative but to protect its goodwill and trademarks by obtaining an injunction against Mod Assistants' further promotion, distribution, offer, and sale of the Infringing Services.

32. Mod Assistants' actions have caused and will cause MyOutDesk irreparable harm for which money damages and other remedies are inadequate. Unless Mod Assistants is restrained by this Court, it will continue and/or expand its illegal activities and otherwise continue to cause great and irreparable damage and injury to MyOutDesk by, among other things:

    a. Depriving MyOutDesk of its common law rights to use and control use of its trademarks;

    b. Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the Infringing Services;

      c.     Causing the public falsely to associate MyOutDesk with Mod Assistants and/or its services, or vice versa;

      d.     Causing incalculable and irreparable damage to MyOutDesk's goodwill and its MOD Mark; and

      e.     Causing MyOutDesk to lose sales of its services.

33. Accordingly, in addition to other relief sought, MyOutDesk is entitled to injunctive relief against Mod Assistants and all persons acting in concert with it.

## FIRST CLAIM

## FEDERAL UNFAIR COMPETITION

### (False Designation of Origin and False Description – 15 U.S.C. § 1125(a))

34. Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

35. Defendant's conduct as alleged in this Complaint constitutes the use of symbols or devices tending falsely to describe the Infringing Services, within the meaning of 15 U.S.C. § 1125(a)(1). Defendant's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the Infringing Services to the detriment of Plaintiff and in violation of 15 U.S.C. § 1125(a)(1).

36. As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to recover up to treble the amount of Defendant's unlawful profits and Plaintiffs' damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

37. Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendant to stop promoting, distributing, offering, and selling the Infringing Services, and any other mark or design similar to Plaintiff's MOD Mark.

## SECOND CLAIM

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER CALIFORNIA STATUTORY LAW

### (Cal. Bus. & Prof. Code §§ 14200 et seq.; Cal. Bus. & Prof. Code § 17200 et seq.)

38. Plaintiff realleges and incorporates by reference each of the allegations contained

elsewhere in this Complaint.

39. Plaintiff owns common law rights in its MOD Mark.

40. Defendant has infringed upon Plaintiff's MOD Mark without the consent of Plaintiff and in connection with the sale, offering for sale, distribution, or advertising of its Infringing Services.

41. Defendant's infringement of Plaintiff's trademark is likely to cause confusion, mistake, and deception as to the source of the origin of Defendant's offerings.

42. Defendant offers the Infringing Services to enhance the commercial value of Defendant's offerings.

43. Defendant's acts violate Plaintiff's trademark rights under California Business & Professions Code §§ 14245 *et seq.*

44. Defendant's conduct as alleged in this Complaint also constitutes "unlawful, unfair, or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of the California Business & Professions Code §§ 17200 *et seq.*

45. Plaintiff is entitled to monetary damages and injunctive relief prohibiting Defendant from offering or selling the Infringing Services, or any other services and/or products bearing a mark or design that is likely to be confused with Plaintiff's MOD Mark.

46. Without injunctive relief, Plaintiff has no means by which to control the continuing injury to its reputation and goodwill or that of Plaintiff's trademark. Plaintiff has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Plaintiff if it loses the ability to control its marks and brand.

47. Because Defendant's conduct has been undertaken willfully, intentionally, and in reckless disregard of the possible injurious consequences, Plaintiff is entitled to exemplary or punitive damages under Cal. Civ. Code § 3294.

## THIRD CLAIM

## TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW

48. Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

49. Plaintiff owns common law rights in its MOD Mark.

50. Defendant's conduct is likely to cause confusion, to cause mistake, or to deceive as to the source of goods offered by Defendant, or as to affiliation, connection, association, sponsorship, or approval of such services, and constitutes infringement of Plaintiff's trademark at common law.

51. Defendant infringed Plaintiff's trademark with knowledge and intent to cause confusion, mistake, or deception.

52. Defendant's conduct is aggravated by that kind of willfulness, wantonness, malice, and conscious indifference to the rights and welfare of Plaintiff for which California law allows the imposition of exemplary damages.

53. As a direct and proximate result of Defendant's activities, Plaintiff has suffered substantial damage.

54. Unless restrained and enjoined, the conduct of Defendant will further impair the value of Plaintiff's trademark and Plaintiff's business reputation and goodwill. Plaintiff has no adequate remedy at law.

55. Plaintiff is entitled to monetary damages and injunctive relief prohibiting Defendant from using the Infringing Services, and any other mark or design similar to Plaintiff's trademark.

56. Without injunctive relief, Plaintiff has no means by which to control the continuing injury to its reputation and goodwill or that of Plaintiff's trademark. Plaintiff has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Plaintiff if it loses the ability to control its mark.

57. Because Defendant's actions have been committed willfully, maliciously, and intentionally, Plaintiff is entitled to recover reasonable attorneys' fees and compensatory and punitive damages (*see* Cal. Civ. Code § 3294).

## FOURTH CLAIM

## CANCELLATION OF TRADEMARK REGISTRATION FOR CONFUSION

## (15 U.S.C. §§ 1064, 1119)

58. Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

59. Defendant's use of the MOD and MOD ASSISTANTS marks to advertise, offer, and

promote services that overlap with and are related to MyOutDesk's services is likely to result in confusion, mistake, or deception as the source of the services, or result in the belief that Defendant is legitimately connected with, sponsored by, or licensed or approved by, MyOutDesk.

60. Defendant's federal trademark registrations for MOD (Reg. No. 7,495,013) and MOD ASSISTANTS and Design mark (Reg. No. 7,320,991) were granted less than five years ago.

61. MyOutDesk has been damaged and will continue to be damaged by registration of the MOD (Reg. No. 7,495,013) and MOD ASSISTANTS and Design mark (Reg. No. 7,320,991), particularly given that Defendant's registrations have been cited against MyOutDesk's pending trademark application for the MOD mark (Ser. No. 98682663).

62. Defendant's MOD (Reg. No. 7,495,013) and MOD ASSISTANTS and Design (Reg. No. 7,320,991) should be canceled pursuant to 15 U.S.C. §§ 1064 and 1119.

## FIFTH CLAIM

## CANCELLATION OF TRADEMARK REGISTRATION FOR FRAUD

60. Plaintiff realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

61. On information and belief, on September 23, 2023 and February 10, 2023, Defendant knowingly made false, material representations to the USPTO as to Defendant being the exclusive owner of the "MOD" mark in commerce with the intent to mislead and deceive the USPTO and to procure registrations to which it was not entitled.

62. The USPTO reasonably relied on Defendant's knowing and false representations when it issued the MOD and MOD ASSISTANTS registrations.

63. Defendant's conduct constitutes fraud on the USPTO and, as such, the MOD and MOD ASSISTANTS registrations are subject to cancellation under 15 U.S.C. § 1064 (3).

64. Pursuant to the Lanham Act, 15 U.S.C. § 1119, Plaintiff seeks an order from this court cancelling Defendant's registrations on the grounds that they are based on fraud.

## PRAYER FOR JUDGMENT

WHEREFORE, MyOutDesk prays that this Court grant it the following relief:

1. Adjudge that MyOutDesk's MOD Mark has been infringed by Defendant, in violation

of MyOutDesk's rights under common law and/or California law;

2. Adjudge that Defendant has competed unfairly with MyOutDesk in violation of MyOutDesk's rights under common law, 15 U.S.C. § 1125(a), and/or California law;

3. Adjudge that Defendant and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers and any person(s) in active concert or participation with it, and/or any person(s) acting for, with, by, through or under it, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

    a. Offering, advertising, promoting, distributing, or providing any products or services, using any words, symbols or designs that so resemble the MOD Mark, as to be likely to cause confusion, mistake or deception, on or in connection with any service that is not authorized by or for MyOutDesk, including without limitation MOD or MOD ASSISSTANTS marks, or any other approximation of MyOutDesk's trademarks;

    b. Using any word, term, name, symbol, device, or combination thereof, including without limitation, the MOD and MOD ASSISSTANTS marks, that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendant or its services with MyOutDesk, or as to the origin of Defendant's services, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

    c. Claiming trademark rights in the MOD or MOD ASSISTANTS marks, or any other word, symbol, or design that is confusingly similar to MyOutDesk's MOD Mark, including by maintaining or applying now, or in the future, for federal registration of trademarks comprising MyOutDesk's MOD Mark or any other word, symbol, or design that is similar to its MOD Mark;

    d. Further infringing the rights of MyOutDesk in and to any of its trademarks, or otherwise damaging MyOutDesk's goodwill or business reputation;

    e. Otherwise competing unfairly with MyOutDesk in any manner; and

    f. Continuing to perform in any manner whatsoever any of the other acts

complained of in this Complaint;

4. Order that Registration No. 7,495,013 and No. 7,320,991 shall be cancelled, and address its certified order to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the United States Patent and Trademark Office, P.O. Box 1450, Alexandria, Virginia 22303-1450;

5. Adjudge that Defendant is prohibited from applying to register any other trademark or service mark which is likely to be confused with, MyOutDesk's MOD Mark;

6. Adjudge that Defendant, within thirty (30) days after service of the judgment demanded herein, be required to file with this Court and serve upon MyOutDesk's counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

7. Adjudge that MyOutDesk recover from Defendant its damages and lost profits, and Defendant's profits, in an amount to be proven at trial, as well as punitive damages under California law;

8. Adjudge that Defendant be required to account for any profits that are attributable to its illegal acts, and that MyOutDesk be awarded (1) Defendant's profits and (2) all damages sustained by MyOutDesk.

9. Order an accounting of and impose a constructive trust on all of Mod Assistants' funds and assets that arise out of its infringing activities;

10. Adjudge that MyOutDesk be awarded costs and disbursements incurred in connection with this action, including MyOutDesk's reasonable attorneys' fees and investigative expenses; and

11. Adjudge that all such other relief be awarded to MyOutDesk as this Court deems just and proper.

Dated: July 9, 2025

Respectfully submitted,

VERSO LAW GROUP LLP

By: */s/ Gregory S. Gilchrist*
Gregory S. Gilchrist
Ryan Bricker
Sophy Tabandeh
Kourtney Speer

Attorneys for Plaintiff
MyOutDesk, LLC

## **DEMAND FOR JURY TRIAL**

MyOutDesk, LLC demands that this action be tried to a jury.

Dated: July 9, 2025

Respectfully submitted,

VERSO LAW GROUP LLP

By: */s/ Gregory S. Gilchrist*
Gregory S. Gilchrist
Ryan Bricker
Sophy Tabandeh
Kourtney Speer

Attorneys for Plaintiff
MyOutDesk, LLC